IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:20-cv-00068-MR

| | |
|---|---|
| **WENDELL J. LEMAITRE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| **FNU GRINDSTAFF, et al.,** | )   **ORDER** |
| | ) |
| **Defendants.** | ) |

**THIS MATTER** is before the Court on initial review of the Amended Complaint [Doc. 9-1]. Also pending are Plaintiff's Motion for Leave to File Amended Complaint [Doc. 9] and Motion for Summons [Doc. 10]. Plaintiff is proceeding *in forma pauperis*. [See Doc. 8]. Plaintiff's motion seeking leave to amend will be granted and the Amended Complaint will be reviewed for frivolity.

**I.    BACKGROUND**

*Pro se* incarcerated Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Mountain View Correctional Institution.[1]  Plaintiff names as Defendants the following

---

[1] Plaintiff is currently incarcerated at the Alexander Correctional Institution.

Mountain View C.I. employees: Michael Slagle, the correctional administrator; FNU Grindstaff, a correctional captain; Adam Hughes, a correctional sergeant; John King, a correctional officer; and FNU T. Harris, a correctional security risk group officer.

Plaintiff alleges that, upon arriving at Mountain View C.I. on May 1, 2018, Defendant Hughes instructed Officer Bayuik to confiscate a bag of Plaintiff's legal materials. Plaintiff alleges that he informed Defendant Hughes and Officer Bayuik that the bag contained important legal documents that Plaintiff was using "to apply and assist as evidence for an MAR (motion for appropriate rel[ief])" in his criminal case. [Doc. 9-1 at 4]. Plaintiff alleges that he became upset when Defendant Hughes threatened to destroy the materials and, when Hughes ordered Plaintiff into a holding cell, Plaintiff refused and asked to speak to the officer in charge (OIC), Lieutenant Jobe. Plaintiff entered the holding cell after Defendant Hughes aimed mace at his face, however, Plaintiff refused handcuffs. When Lieutenant Jobe arrived, he agreed that Plaintiff was allowed to have the bag of legal materials and released Plaintiff to his assigned housing area. Plaintiff subsequently learned that Defendant Hughes exaggerated the incident and charged him with several disciplinary infractions.

The following morning, Plaintiff alleges that between 10 and 15 staff members—including Defendants Grindstaff, Hughes, Harris, and King—surrounded him and placed him in handcuffs. Defendant Grindstaff told Plaintiff that Defendant Hughes "should [have] lit [Plaintiff's] ass up yesterday." [Doc. 9-1 at 6]. Defendant Harris removed Plaintiff's phone/address book from Plaintiff's pocket and said, "I have a nice write [up] for you coming." [Doc. 9-1 at 7]. Plaintiff was then placed in restrictive housing. Plaintiff's bag of legal mail was not transferred with Plaintiff and it was not included on the DC-160 inventory of Plaintiff's property. Plaintiff further appears to allege that Defendant King confiscated as contraband five homemade books (two of which included legal documents), family photographs, magazines, and an address book, the deprivation of which Plaintiff alleges caused him to be denied "access to family." [Doc. 9-1 at 8]. Defendant Harris initiated disciplinary action against Plaintiff for allegedly possessing gang-related material that was found in Plaintiff's property, but this charge was dismissed on appeal. Plaintiff alleges that a "harassment campaign" lasted for 90 days, during which Plaintiff received frivolous disciplinary reports and was kept in disciplinary housing for no reason. [Doc. 9-1 at 9].

3

Plaintiff alleges that he wrote several grievances to which he received no response. Plaintiff faults Defendant Hughes for obstructing the grievance process and retaliating against him for exercising his First Amendment rights. Plaintiff further alleges that he wrote letters to Defendant Slagle and Kenneth Lassiter, the North Carolina Department of Public Safety (NCDPS) Director of Prisons, notifying them of Defendants' actions, but that he received no response. Plaintiff appears to allege that the prison intentionally mailed the letter to Lassiter with inadequate postage so that it would be returned, which came to pass, and that personnel at Mountain View C.I. then opened and read it.

On August 2, 2018, Plaintiff alleges that he was transferred to a maximum-security prison. Plaintiff appears to allege that the transfer to a higher-level facility was in retaliation for the grievances he wrote at Mountain View C.I.

Plaintiff alleges that Defendants' actions caused pain, suffering, and the intentional infliction of emotional distress. Plaintiff further alleges that Defendants Grindstaff and Slagle failed to correct their subordinates' misconduct.

Plaintiff seeks a declaratory judgment, injunctive relief, and compensatory and punitive damages.

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding *in forma pauperis*, the Court must review the Amended Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see 28 U.S.C. § 1915A (requiring frivolity review for prisoners' civil actions seeking redress from governmental entities, officers, or employees).

In its frivolity review, a court must determine whether a complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States,

5

and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

As a preliminary matter, the Amended Complaint refers to individuals who have not been named as Defendants. See Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"); see, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served). To the extent that Plaintiff is attempting to assert any claims against non-parties, these are nullities that will be dismissed without prejudice.

Plaintiff alleges that Defendants violated his right to access the courts. Inmates have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. Bounds v. Smith, 430 U.S. 817, 821 (1977); see Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir.1978). To make out a claim for denial of access to the courts, the inmate cannot rely on conclusory allegations; rather, he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996). The injury requirement is not satisfied by any type of frustrated legal claim; rather, the prisoner must demonstrate that he had a

6

nonfrivolous post-conviction or civil rights legal claim that has been frustrated or impeded. See Lewis v. Casey, 518 U.S. 343, 353 (1996). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Casey, 518 U.S. at 355.

Plaintiff alleges that Defendants confiscated legal materials that he needed to prepare and support an MAR challenging a conviction in state court. However, Plaintiff's allegations are too vague and conclusory to plausibly show that any Defendant frustrated or impeded a non-frivolous post-conviction claim. Therefore, Plaintiff's access to courts claim will be dismissed without prejudice.

Next, Plaintiff alleges that Defendants retaliated against him. The First Amendment right to free speech includes "the right to be free from retaliation by a public official for exercising that right." Suarez Corp. v. McGraw, 202 F.3d 676 (4th Cir. 2000). Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth, 584 F.2d at 1347. In order to state a colorable retaliation claim under § 1983, a plaintiff must allege: "(1) [ ]he engaged in protected First Amendment activity, (2) the defendant[ ] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity

and the defendant['s] conduct." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)).

Plaintiff has plausibly alleged that Defendants Grindstaff, Hughes, Harris, and King took various retaliatory actions against Plaintiff because he complained about his treatment at Mountain View C.I. Therefore, Plaintiff's retaliation claim will pass initial review against these Defendants.[2]

Plaintiff alleges that Defendants refused to respond when he attempted to use the prison grievance procedure. "[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). "An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance procedure." Booker v. S.C. Dep't of Corr., 885 F.3d 533, 541 (4th Cir. 2017). Plaintiff's allegations that he submitted grievances that went unanswered fails to rise to the level of a constitutional violation.

---

[2] Included among the alleged acts of retaliation is Defendant Harris' initiation of disciplinary proceedings against Plaintiff for possessing gang material that, according to Plaintiff, was dismissed on appeal. However, to the extent that Plaintiff alleges that Defendants initiated other frivolous disciplinary actions that resulted in disciplinary convictions, such claims would appear to be barred by Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997) because success on the merit of these claims would necessarily imply the invalidity of Plaintiff's disciplinary convictions.

Therefore, Plaintiff's claims that Defendants deprived him of access to the prison grievance procedure will be dismissed for failure to state a claim.

Plaintiff appears to allege that someone at the prison interfered when he attempted to mail a letter to Kenneth Lassiter. As a general matter, prisoners have the right to both send and receive mail. See Thornburgh v. Abbott, 490 U.S. 401, 408 (1989); Pell v. Procunier, 417 U.S. 817 (1974). Restrictions on this right are valid if they are reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987).

Plaintiff appears to allege that his letter to Lassiter was purposefully mailed without postage so that it would be returned, and that when it was returned, personnel at Mountain View C.I. opened and read it. Plaintiff fails to identify the Defendant or Defendants who allegedly interfered with mailing his letter to Kenneth Lassiter. Moreover, this isolated incident of alleged mail mishandling does not rise to the level of a constitutional violation. See Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) ("few isolated instances of plaintiff's [legal] mail being opened out of his presence" that were "either accidental or the result of unauthorized subordinate conduct … were not of constitutional mandate."); Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) ("an isolated incident of mail tampering is usually insufficient to establish a constitutional violation."); Pearson v. Simms, 345 F.Supp.2d 515, 519 (D.

9

Md. 2003), *aff'd* 88 F. App'x 639 (4th Cir. 2004) ("occasional incidents of delay or non-delivery of mail are not actionable under § 1983"). Therefore, to the extent that Plaintiff intends to assert a claim for the alleged interference with his letter to Kenneth Lassiter, it will be dismissed for failure to state a claim.

Plaintiff appears to complain about his classification and housing. A prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification, barring some showing by the prisoner that his confinement posed an atypical and significant hardship in relationship to the ordinary incidents of prison life. See Wilkinson v. Austin, 545 U.S. 209 (2005); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not

otherwise violative of the Constitution.'") (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).

To the extent that Plaintiff complains about having been placed in restrictive housing during a 90-day period and transferred to a maximum-security prison, he has failed to state a claim upon which relief can be granted. Plaintiff has failed to allege that either his placement in restrictive housing or his transfer to another prison posed an atypical and significant hardship in relationship to the ordinary incidents of prison life. Therefore, Plaintiff's claims with regards to his classification and housing will be dismissed.

Plaintiff alleges that Defendants improperly inventoried and confiscated various pieces of his property. With regards to a prisoner's § 1983 claim regarding the alleged loss of personal property, "a government official's random and unauthorized act, whether intentional or negligent, which causes the loss of private property is not a violation of procedural due process when the state provides a meaningful postdeprivation remedy." Yates v. Jamison, 782 F.2d 1182, 1184 (4th Cir. 1986) (citing Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986), and Palmer v. Hudson, 468 U.S. 517 (1984)). As such, "claims of unlawful conversion or negligent loss fail to state a claim

under § 1983." Francis v. Md., 820 F.2d 1219 (Table), 1987 WL 37660, at *1 (4th Cir. 1987) (citing Daniels, 474 U.S. at 327). To be sure, "intentional deprivation of property by random action by a state employee does not state a cognizable claim under § 1983 if there are adequate state remedies available. Id. (citing Palmer, 468 U.S. 517). "North Carolina has adequate post-deprivation remedies for the confiscation or destruction of property, such as a tort action for conversion against individual defendants." Williams v. Crosson, 2016 WL 9448025, at *6 (E.D.N.C. Sept. 1, 2016), *aff'd*, 688 Fed. App'x 189 (4th Cir. 2017).

Here, because an action for conversion against Defendants is an available, adequate post-deprivation remedy, Plaintiff cannot state a claim for the allegedly improper deprivation of his property under § 1983.

Plaintiff makes supervisory claims against Defendants Grindstaff and Slagle. A supervisor can be liable under § 1983 where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

12

Plaintiff alleges that Defendant Grindstaff encouraged and failed to correct misconduct by Defendants Hughes, King, and Harris, and that Defendant Slagle encouraged and failed to correct the other Defendants after Plaintiff informed him of their misconduct in a grievance and letter. Plaintiff's supervisory claims necessarily fail as to alleged constitutional violations that have not passed initial review because there is no underlying claim upon which supervisory liability could be based. See generally Waybright v. Frederick Co, Md., 528 F.3d 199, 203 (4th Cir. 2008) ("supervisors and municipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer,' at least in suits for damages."). To the extent that Plaintiff attempts to base his supervisory claims on the other Defendants' alleged retaliation, the claims against Defendants Grindstaff and Slagle are too vague and conclusory to proceed. Plaintiff makes no allegations whatsoever that there was an affirmative causal link between the supervisory Defendants' alleged inaction and the any constitutional injury.

Plaintiff appears to assert a claim for the intentional infliction of emotional distress under North Carolina law. The elements of intentional infliction of emotional distress are: "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress."

13

Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981) (citations and quotation marks omitted).  The severe emotional distress required for intentional infliction of emotional distress is "any emotional or mental disorder, such as for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe or disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Piro v. McKeever, 245 N.C. App. 412, 416, 782 S.E.2d 367, 371 (2016), *aff'd* 369 N.C. 291, 794 S.E.2d 501 (citations omitted). Conduct is "extreme and outrageous" when it "exceeds all bounds usually tolerated by a decent society." Shreve v. Duke Power Co., 85 N.C. App. 253, 257, 354 S.E.2d 357, 359 (1987) (citation and quotations omitted).

While Plaintiff alleges in a conclusory manner that Defendants' actions caused him severe emotional distress, he has not alleged a severe or disabling emotional or mental condition as required under North Carolina law.  The intentional infliction claim will therefore be dismissed.

The Amended Complaint includes a request for preliminary injunctive relief.  A preliminary injunction is an extraordinary remedy afforded before trial at the discretion of the district court. Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013).  It is an extraordinary remedy that is never awarded as of right. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  In

14

Case 1:20-cv-00068-MR    Document 11    Filed 09/21/20    Page 14 of 17

each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987). "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24. To obtain a preliminary injunction, a plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Id. at 20; Di Biase v. SPX Corp., 872 F.3d 224, 229 (4th Cir. 2017).

Plaintiff asserts in a conclusory manner that he will face irreparable injury unless he is granted a preliminary injunction. However, he has supplied no factual allegations to support that contention. Nor has he attempted to demonstrate a likelihood of success on the merits, that the balance of equities tips in his favor, or that an injunction is in the public interest. Moreover, Plaintiff is no longer incarcerated at Mountain View C.I. and it does not appear that the conditions he allegedly experienced at that institution are likely to recur. Therefore, his requests for declaratory and injunctive relief appear to be moot. See generally Williams v. Griffin, 952

15

F.2d 820 (4th Cir. 1991); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986).

Plaintiff has filed a Motion asking the Court to direct the U.S. Marshals Service to serve Defendants with summons forms he has prepared. [Doc. 10]. This Motion will be denied as moot because the Clerk will be instructed to seek waiver of service for Defendants Grindstaff, Hughes, King, and Harris, and no claim has passed initial review against Defendant Slagle. See generally 28 U.S.C. § 1915.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's retaliation claims against Defendants Grindstaff, Harris, Hughes, and King have survived initial review. The remaining claims are dismissed without prejudice.

This Court's Local Rule 4.3 sets forth the procedure to waive service of process for current or former employees of NCDPS in actions filed by North Carolina State prisoners. In light of the Court's determination that this case passes initial review, the Court will order the Clerk of Court to commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Grindstaff, Harris, Hughes, and King, who are alleged to be a current or former employees of NCDPS.

**IT IS, THEREFORE, ORDERED** that:

(1) Plaintiff's Motion for Leave to File Amended Complaint [Doc. 9] is **GRANTED**. The Clerk is instructed to docket the proposed Amended Complaint [Doc. 9-1] as the Amended Complaint.

(2) Plaintiff's retaliation claims against Defendants Grindstaff, Harris, Hughes, and King have survived initial review. The Clerk of Court shall commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Grindstaff, Harris, Hughes, and King who are alleged to be current or former employees of NCDPS.

(3) Plaintiff's remaining claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

(4) Plaintiff's Motion for Summons [Doc. 10] is **DENIED** as moot.

The Clerk is further directed to mail Plaintiff an Opt-In/ Opt-Out form pursuant to the Standing Order in Misc. Case No. 3:19-mc-00060-FDW.

**IT IS SO ORDERED.**

Signed: September 21, 2020

Martin Reidinger
Chief United States District Judge