IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:20-cv-00068-MR

| | | |
|---|---|---|
| WENDELL J. LEMAITRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| DONALD GRINDSTAFF, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Motion for Summary
Judgment filed by Defendants Donald Grindstaff, Tommy Harris, Adam
Hughes, and John King [Doc. 34]. Also pending is the Plaintiff's pro se
Motion for an Order Compelling Discovery [Doc. 43].

## I. BACKGROUND

The incarcerated Plaintiff Wendell J. LeMaitre, proceeding pro se, filed
this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly
occurred at the Mountain View Correctional Institution ("MVCI").[1]    The
Amended Complaint, which is verified, passed initial review for retaliation
against Defendants Donald Grindstaff, a correctional captain; Tommy Harris,

_____

[1] The Plaintiff is presently incarcerated at the Alexander Correctional Institution.

a correctional Security Risk Group ("SRG") officer; Adam Hughes, a correctional sergeant; and John King, a correctional officer. [Doc. 12: Verified Am. Complaint; Doc. 11: Initial Review of Am. Complaint]. The Plaintiff seeks a declaratory judgment, injunctive relief, and compensatory and punitive damages. [Doc. 11: Initial Review of Am. Complaint at 4].

After the Defendants filed Answers, the Court issued a Pretrial Order and Case Management Plan setting the discovery cutoff date as July 20, 2021 and appointing North Carolina Prisoner Legal Services ("NCPLS") for the limited purpose of assisting the Plaintiff with discovery. [Doc. 22: Pretrial Order and Case Management Plan]. On July 23, 2021, NCPLS was permitted to withdraw from the representation after assisting the Plaintiff with discovery, providing him with the relevant documents, and offering him advice. [Doc. 26: Order on Motion to Withdraw].

The Defendants filed the instant Motion for Summary Judgment on December 17, 2021. [Doc. 34: MSJ]. The Court notified the Plaintiff of the opportunity to respond to Defendants' Motion and to present evidence in opposition pursuant to Fed. R. Civ. P. 56. [Doc. 38: Roseboro[2] Order]. The

---

[2] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

Plaintiff has filed a Response[3] [Doc. 40: MSJ Response], and the Defendants chose not to reply [Doc. 42: Notice]. Having been fully briefed, this matter is ripe for disposition.

On February 2, 2022,[4] the Plaintiff filed a Motion for an Order Compelling Discovery. [Doc. 43: Motion to Compel]. The Defendants have filed a Response and documents opposing the Motion. [Doc. 44: Motion to Compel Response]. The Plaintiff has not replied, and the time to do so has expired.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict

---

[3] In his summary judgment Response, the Plaintiff alludes to various claims—including access to the courts, property loss, the failure to respond to grievances, and classification and housing—which did not pass initial review. [See Doc. 11: Initial Review of Am. Complaint]. It also appears that he is attempting to present new claims such as conspiracy and due process violations. [See Doc. 40: Plaintiff's Verified MSJ Brief at 15, 27]. These claims are not properly before the Court and will not be separately addressed in this Order. See generally Fed. R. Civ. P. 15 (addressing amendment); Harris v. Reston Hosp. Ctr., LLC, 523 F. App'x 938, 946 (4th Cir. 2013) (holding that "constructive amendment of the complaint at summary judgment undermines the complaint's purpose and can thus unfairly prejudice the defendant").

[4] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Lewis v. Richmond City Police Dep't, 947 F.2d 733 (4th Cir. 1991) (applying prisoner mailbox rule to § 1983 case).

3

for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at

248.  To that end, only evidence admissible at trial may be considered by the Court on summary judgment.  <u>Kennedy v. Joy Technologies, Inc.</u>, 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party.  <u>Anderson</u>, 477 U.S. at 255.  Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).  As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986).  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott</u>, 550 U.S. at 380.

5

## III.   FACTUAL BACKGROUND

Viewing the parties' forecasts of evidence in the light most favorable to the Plaintiff, the following is a recitation of the relevant facts.

Upon the Plaintiff's arrival at MVCI on May 1, 2018, Officer Bayuik[5] was assigned to inventory the Plaintiff's property.[6]  [Doc. 12: Verified Am. Complaint at 3-3].  Sergeant Hughes was present during the inventory and whispered in Officer Bayuik's ear.  [Id. at 4].  A few seconds later, Officer Bayuik told the Plaintiff that a bag of legal material and documents needed to be sent home or destroyed.  [Id.].  The Plaintiff told Officer Bayuik that he needed the documents for a Motion for Appropriate Relief (MAR), and he told Sergeant Hughes "what exactly was (Legal Property) in the shipping bag that he wanted Plaintiff to send home or destroy."  [Id.].   Sergeant Hughes then ordered the Plaintiff to enter a holding cell and said that "he would expose [sic] of  the property himself…"  [Id.].  The Plaintiff "became upset," "refused to enter the … holding cell without his property (Legal) in his possession," and asked to speak with the officer in charge (OIC).  [Id. at 5].

_____

[5] Officer Bayuik is not a Defendant in this case.

[6] Officer Harris states that he was assigned to escort the Plaintiff to intake; that the Plaintiff made verbal threats and refused to be placed in a holding cell in his presence; and that disciplinary charges resulted from that incident.  [Doc. 37-2: Harris Aff. at ¶¶ 6-10].  In his verified response to the summary judgment motion, the Plaintiff denies that he had any interaction whatsoever with Officer Harris on May 1.  [Doc. 40: Plaintiff's Verified MSJ Brief at 12].

Sergeant Hughes "became aggressive by snatching his mase [sic] can from the holster and aiming at [Plaintiff's] face with orders to step into the holding cell in a screaming manner." [Id.]. The Plaintiff stepped into the holding cell. [Id.]. However, as the cell's sliding doors were closing, the Plaintiff "stepped in between the cell door preventing it from fully closing, and stuck his body halfway outside of the cell to beg prison officials not to destroy that particular property…." [Doc. 40: Plaintiff's Verified MSJ Brief at 3]. The Plaintiff then backed into the cell and allowed the doors closed "after getting his final warning out…." [Id.].

A few minutes later, Sergeant Hughes opened the cell's food slot and "demanded" that the Plaintiff submit to handcuffs. [Id.]. The Plaintiff asked why he was being cuffed, and Sergeant Hughes responded that the Plaintiff was going to restrictive housing for refusing to send home or destroy the property. [Id. at 4]. The Plaintiff refused to be cuffed "out of fear of what would possibly occure [sic] next from the aggressive Sgt. (Hughes)," and asked to speak to the OIC. [Id.]. Sergeant Hughes continued to "aggressively demand" that the Plaintiff submit to cuffs for 25 minutes, and finally left. [Id.].

Lieutenant Jobe,[7] the OIC, arrived at the holding cell approximately two hours later and said that the Plaintiff was "being very disruptive towards his staff due to excessive property needing to be sent home." [Id. at 5]. Lieutenant Jobe told the Plaintiff that he would check the property in question. [Id.; Doc. 37-4 at 15: Jobe Stmt.]. Jobe advised the Plaintiff that his radio was fine but that he needed to throw away some old papers. [Doc. 40: Plaintiff's Verified MSJ Brief at 5; Doc. 37-4 at 15: Jobe Stmt.]. The Plaintiff agreed, submitted to cuffs, and was taken to a housing unit along with the disputed bag of legal materials. [Doc. 12: Am. Compl. at 6; Doc. 40: Plaintiff's Verified MSJ Brief at 6; Doc. 37-4 at 15: Jobe Stmt.].

When the Plaintiff reached the housing unit at around 8:30 p.m., he requested a grievance form from a pod officer. [Doc. 40: Plaintiff's Verified MSJ Brief at 6]. He submitted a grievance about Sergeant Hughes' "misconduct of harassment, and threats of separating Plaintiff's legal material from his possession." [Id.; Doc. 40-2: Plaintiff's MSJ Ex. at 2]. At around 11:00 p.m., the Plaintiff was issued a disciplinary report on Sergeant Hughes' allegations that the Plaintiff became irate and refused orders to go into a holding cell during his intake inventory. [Doc. 40-2: Plaintiff's MSJ Ex.

---

[7] Lieutenant Jobe is not a Defendant in this case.

at 3]. The Plaintiff was found guilty and received sanctions including the loss of credit time served.[8] [Doc. 12: Am. Compl. at 6].

Defendant Grindstaff learned of the May 1 incident on May 2, and decided to place the Plaintiff in Restrictive Housing on Administrative Control ("RHAC") pending disciplinary actions for making threats towards staff and refusing orders. [Doc. 37-1: Grindstaff Aff. at ¶¶ 6-8]. The Plaintiff was directed to the front entrance of the pod, where he was met by 10 to 15 staff members, including Captain Grindstaff, Sergeant Hughes, SRG Officer Harris, and Officer King. [Doc. 12: Verified Am. Compl. at 6; Doc. 40: Plaintiff's Verified MSJ Brief at 6-7]. The staff members surrounded the Plaintiff, cuffed him, and escorted him to restrictive housing. [Doc. 12: Verified Am. Compl. at 6]. During this encounter, Captain Grindstaff told the Plaintiff that "Sergeant Hughes should of [sic] lit your ass up yesterday!" [Id. at 6]. Officer Harris removed an address book from the Plaintiff's pocket and told him that "a nice disciplinary report [was] on the way." [Id. at 7]. Later that night, when the Plaintiff received his property, the disputed bag of legal materials was not delivered, nor was it included in the property inventory

---

[8] NCDPS's website indicates that the Plaintiff received five disciplinary infractions for May 1: two "disobey order;" two "profane language;" and one "threaten to harm/injure staff." https://webapps.doc.state.nc.us/opi/viewoffenderinfractions.do?method=view&offenderID=0753054&listpage=1&listurl=pagelistoffendersearchresults&searchLastName=lemaitre&searchFirstName=wendell&searchDOBRange=0&obscure=Y (last accessed May 3, 2022); Fed. R. Evid. 201.

form completed by Officer King. [Id. at 7-8]. Officer King also confiscated as contraband five homemade books that contained MAR materials as well as other personal items. [Id. at 8].

On May 2, the Plaintiff received a disciplinary write-up on Officer King's allegation that he found contraband in the Plaintiff's property, including an altered radio, five altered books, torn-out magazine pages and pictures, and "1 hand written letter of how to receive drugs into the facility." [Doc. 40-2: Plaintiff's MSJ Ex. at 8]. Sergeant Hughes had the Plaintiff sign the disciplinary form and told the Plaintiff, "I always get my way!" [Doc. 40: Plaintiff's Verified MSJ Brief at 7]. Sergeant Hughes did not provide the Plaintiff with the opportunity to request evidence or make a statement.[9] [Id. at 7-8]. The Plaintiff received a second disciplinary write-up for a letter that Officer Harris found in his property, which Sergeant Price[10] had determined to include SRG content. [Doc. 37-4: Defense Ex. at 1; Doc. 40: Plaintiff's Verified MSJ Brief at 7-8]. The Plaintiff was allowed to submit a statement and requested evidence with regard to the second write-up. [Doc. 40: Plaintiff's Verified MSJ Brief at 8].

---

[9] The Offense and Disciplinary Report indicates that the Plaintiff refused to provide a written statement, or to sign or initial a DC-138A form, and that his refusal was witnessed by Sergeant Hughes and Officer R. Burleson. [Doc. 40-2: Plaintiff's MSJ Ex. at 8].

[10] Sergeant Price is not a Defendant in this case.

Sergeant Hughes was assigned to investigate both of the May 2 infractions. [Doc. 37-3: Hughes Aff. at ¶¶ 24; Doc. 40-2: Plaintiff's MSJ Ex. at 8; Doc. 37-4: Defense Ex at 1]. Sergeant Hughes recommended an A14[11] charge for the SRG letter, and A99,[12] A12,[13] and C17[14] charges for the homemade books and other items. [Doc. 40-2: Plaintiff's MSJ Ex. at 8; Doc. 37-4: Defense Ex at 1]. On May 8, the Plaintiff pleaded guilty to the A99 and C17 infractions, and received sanctions including the loss of credit time served. [Doc. 40-2: Plaintiff's MSJ Ex. at 8-9]. On May 16, the DHO found him guilty of the A14 SRG infraction at a disciplinary hearing and imposed sanctions including the loss of credit time served.[15] [Doc. 37-4: Defense Ex at 3]. Captain Grindstaff, Sergeant Hughes, Officer King, and Officer Harris

---

[11] "Participate in, or organize, whether individually or in concert with others, any gang or Security Risk Group (SRG), or participate in any activity or behavior associated with a Security Risk Group." NCDPS Policy and Procedure B.0202(a) (Offender Disciplinary Procedures).

[12] "Attempt to commit any [A offense], aid another person to commit any of the above-listed offenses, or make plans to commit any of the above-listed offenses…." NCDPS Policy and Procedure B.0202(a) (Offender Disciplinary Procedures).

[13] "Manufacture, possess, introduce, sell or use any unauthorized intoxicant or alcoholic beverage, or possess associated paraphernalia." NCDPS Policy and Procedure B.0202(a) (Offender Disciplinary Procedures).

[14] "Possess contraband not constituting a threat of escape or a danger of violence." NCDPS Policy and Procedure B.0202(a) (Offender Disciplinary Procedures).

[15] NCDPS's website reveals a disciplinary infraction for "attempt Class A offense" and "no threat contraband" on May 2, 2018. Fed. R. Evid. 201.

"loitered" inside the disciplinary hearing room while the Plaintiff's disciplinary charges were heard by Randy Mull, the disciplinary hearing officer ("DHO"). [Doc. 40: Plaintiff's Verified MSJ Brief at 11; Doc. 40-2: Plaintiff's MSJ Ex at 114]. However, Captain Grindstaff, Officer Harris, and Officer King did not participate in the disciplinary hearing and had no role in assessing any disciplinary sanctions. [Doc. 37-1: Grindstaff Aff. at ¶ 14; Doc. 37-2: Harris Aff. at ¶ 13; Doc. 37-3: King Aff. at ¶ 13]. The A14 infraction was later dismissed on appeal. [Doc. 12: Verified Am. Compl. at 8; Doc. 40: Plaintiff's Verified MSJ Brief at 13; Doc. 40-2: Plaintiff's MSJ Ex at 32 (May 13, 2019 Memorandum from Monica Bond, Chief of Disciplinary Services, to Plaintiff stating that his "Appeal of the A14 offense dated 5/21/18 @ 1330 hrs, was reviewed on appeal on 6/20/18, the decision of the DHO was dismissed.")].

The Plaintiff submitted additional grievances on May 4, June 1, July 2, and August 2, 2018, after his initial grievances received no response. [Doc. 40-2: Plaintiff's MSJ Ex at 18, 21, 24-25]. On July 6, 2018, the Plaintiff was placed back in restrictive housing and Sergeant Hughes had more disciplinary charges placed on him.[16] [Doc. 40: Plaintiff's Verified MSJ Brief

---

[16] NCDPS's website reveals a disciplinary infraction for "substance possession" on that date. Fed. R. Ev. 201. He also received infractions for "disobey order" on May 19 and June 8, 2018. Id.

at 39-40].  On July 9, 2018, the Plaintiff submitted another grievance.  [Id. at 40].  Defendants Hughes and King approached the Plaintiff's cell, smiled, and returned with another disciplinary report.[17]  [Id.].  On July 11, 2018, Defendant Hughes approached the Plaintiff's cell, ordered him to turn over his radio, and gave him a disciplinary report alleging that the radio was contraband.[18]  [Id. at 11].

The Plaintiff was demoted to a higher custody level by MVCI staff and, on August 2, 2018, Defendant Hughes personally drove him to a maximum security facility, Alexander CI.  [Id. at 10-11; Doc. 40-2: Plaintiff's MSJ Ex. at 114-15].

On September 11, 2018, the Plaintiff filed a grievance at Alexander CI.  [Id. at 26].  A grievance response states that "[r]ecords do not indicate that any grievances were filed by Lemaitre while housed at MVCI."  [Id. at 28].  The Step Three appeal was denied because there was no evidence of policy violation, discrimination, retaliation, disrespect, or abuse of authority by staff regarding the processing of Plaintiff's grievances.  [Id. at 30].

---

[17] NCDPS's website reveals a disciplinary infraction for "lock tampering" on July 9, 2018.  Fed. R. Ev. 201.

[18] NCDPS's website reveals a disciplinary infraction for "no threat contraband" on July 10, 2018.  Fed. R. Evid. 201.

13

## IV.    DISCUSSION

### A.    Sovereign Immunity

A suit against a state official in his official capacity is construed as against the state itself.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983.  Id.; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978).  Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts.  See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).

Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983.  See Quern v. Jordan, 440 U.S. 332, 343 (1979).  Likewise, North Carolina has not waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983.  See generally Mary's House, Inc. v. North Carolina, 976 F.Supp.2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina).   As such, the Defendants are entitled to summary judgment to the extent that the Plaintiff sought to name them in their official capacities.

## B. Retaliation

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for exercising that right."  Suarez Corp. v. McGraw, 202 F.3d 676 (4th Cir. 2000).  Prison officials may not retaliate against an inmate for exercising a constitutional right.  See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978).  In order to state a colorable retaliation claim under § 1983, a plaintiff must allege: "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct."  Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (citing Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017); quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)).

A plaintiff suffers adverse action if the allegedly retaliatory conduct "would likely deter a person of ordinary firmness from the exercise of First Amendment rights."  Id.  A plaintiff seeking to recover for retaliation "must show that the defendant's conduct resulted in something more than a '*de minimis* inconvenience' to [his] exercise of First Amendment rights." Constantine, 411 F.3d at 500 (quoting ACLU of Md., Inc. v. Wicomico Cnty.,

Md., 999 F.2d 780, 786 n.6 (4th Cir. 1993)).  This objective inquiry examines the specific facts of each case, taking into account the actors involved and their relationship.  Balt. Sun Co. v. Erlich, 437 F.3d 410, 416 (4th Cir. 2006).  "While the Plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of the tendency of that conduct to chill First Amendment activity, it is not dispositive."  Constantine, 411 F.3d at 500.

To establish a causal connection, "a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of [him] engaging in protected activity."  Constantine, 411 F.3d at 501.  The same-decision test applies to determining the causation element of a prisoner's retaliation claim.  Martin, 977 F.3d at 300.  Once the prisoner-plaintiff shows that his "protected conduct was a substantial motivating factor in a prison guard's decision to take adverse action," the burden then shifts to the defendant to prove a permissible basis for taking that action.  Id.

Bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim.  Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).  In the prison context, retaliation claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct."  Id.

16

The Plaintiff has raised a number of retaliation claims that will be addressed in turn. First, the Plaintiff alleges that, during the 90 days he spent at MVCI, the Defendants charged him with false disciplinary infractions and placed him in restrictive housing each time he complained about staff or attempted to file a grievance. [Doc. 12: Verified Am. Complaint at 9]. In the Order on initial review, the Court noted that the Plaintiff's claims of retaliation appear to be barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994) and <u>Edwards v. Balisok</u>, 520 U.S. 641 (1997), insofar as the related disciplinary infractions remained undisturbed. [Doc. 11: Initial Review of Am. Complaint at 8, n.2]. The Plaintiff has not attempted to demonstrate that <u>Heck</u> does not apply. On summary judgment, the Plaintiff has presented a forecast of evidence that only the disciplinary infraction asserted by Defendant King May 2 was dismissed on appeal. [Doc. 12: Verified Am. Compl. at 8; Doc. 40: Plaintiff's Verified MSJ Brief at 13; Doc. 40-2: Plaintiff's MSJ Ex at 32 (May 13, 2019 Memorandum from Monica Bond, Chief of Disciplinary Services, to Plaintiff stating that his "Appeal of the A14 offense dated 5/21/18 @ 1330 hrs, was reviewed on appeal on 6/20/18, the decision of the DHO was dismissed.")]. Accordingly, the Defendants will be granted summary judgment on the retaliation claims that relate to standing disciplinary infractions because the Plaintiff's success on those claims would necessarily undermine the validity

of those infractions. The Court will separately address the May 2 SRG infraction that appears to have been dismissed.

The Plaintiff alleges that he received the May 2 SRG disciplinary infraction in retaliation for his verbal complaints and written grievance on May 1. [Doc. 12: Verified Am. Complaint at 9; Doc. 40: Plaintiff's Verified MSJ Brief at 17].

The forecast of evidence demonstrates that the charge was initiated by Defendant Harris upon finding a suspicious letter in the Plaintiff's property [Doc. 37-4: Defense Ex at 1-2, 8, 12; Doc. 37-3: Hughes Aff. at ¶¶ 25-26; see Doc. 37-4: Defense Ex at 16-20 (Letter)]; that the letter's SRG content was verified by Sergeant Price, who is not a defendant in this case [Doc. 37-3: Hughes Aff. at ¶ 25]; that Defendant Hughes investigated the matter and recommended an A14 charge based on the evidence [Id. at ¶¶ 26-30]; that the Defendants were present at the disciplinary hearing [Doc. 40: Plaintiff's Verified MSJ Brief at 11; Doc. 40-2: Plaintiff's MSJ Ex at 114], but that Defendants Grindstaff, Harris, and King did not participate in the disciplinary hearing and had no role in assessing the Plaintiff's disciplinary sanctions [Doc. 37-1: Grindstaff Aff. at ¶ 14; Doc. 37-2: Harris Aff. at ¶ 12; Doc. 37-4: King Aff. at ¶ 13]; and that the A14 charge was dismissed on appeal for an

unspecified reason. [Doc. 12: Verified Am. Compl. at 8; Doc. 40: Plaintiff's Verified MSJ Brief at 13; Doc. 40-2: Plaintiff's MSJ Ex at 32].

The Plaintiff has failed to forecast any credible non-conclusory evidence that his First Amendment exercise was a substantial motivating factor in the SRG disciplinary charge and restrictive housing placement, and the Defendants have forecast evidence that they asserted the charge for legitimate reasons.[19] Moreover, the Plaintiff's conclusory claim that the charge was retaliatory must be treated with skepticism. See Adams, 40 F.3d 74. The Plaintiff's claim is particularly suspect because the Plaintiff's extensive disciplinary history includes an infraction for similar conduct at another prison, i.e., "involvement w/gang or SRG."[20] Fed. R. Evid. 201. The Defendants have presented a forecast demonstrating that the SRG disciplinary charge was imposed because it was warranted by the circumstances, rather than due to any retaliatory motive. Plaintiff has presented nothing other than his unsupported conclusions to rebut that

---

[19] Even if the Plaintiff's other disciplinary infractions were not barred by Heck, the Defendants would be granted summary judgment for these same reasons.

[20] The Plaintiff's infraction history outside of MVCI also includes: five "threaten to harm/injure staff," five "profane language," seven "disobey order," and two "substance possession."

forecast. Accordingly, the Defendants' Motion for Summary Judgment will be granted with regard to the May 2 SRG disciplinary infraction.

The Plaintiff further claims that Defendants Hughes, King, and Harris retaliated against him by confiscating his legal documents and personal property [Doc. 12: Verified Am. Complaint at 8, 10-12]; that Defendant Hughes obstructed the grievance process [id. at 12]; and that "staff"[21] purposefully left postage off of a letter to Kenneth Lassiter [id. at 10]. The Plaintiff's claims that the foregoing acts were retaliatory are unsupported by anything other than his own conclusory allegations. To the extent that the Plaintiff's property contained suspected contraband, the forecast of evidence demonstrates that the confiscations were supported by a legitimate penological interest for the reasons discussed supra. Insofar as he claims that his property, mail, and grievances were improperly confiscated or otherwise mishandled, he has failed to demonstrate that such was anything more than *de minimis*. See Constantine, 411 F.3d at 500. Accordingly, the Defendants will be granted summary judgment as to these retaliation claims.

Finally, the Plaintiff claims that the Defendants increased his classification level and transferred him to a maximum security prison "due to

---

[21] This allegation fails to state a claim insofar as the Plaintiff fails to attribute this action to any Defendant(s).

issuing several grievances on the entire matter." [Doc. 12: Verified Am. Complaint at 9]. The Plaintiff has failed to forecast any non-conclusory, credible evidence that retaliation was a substantial motivating factor in any Defendant's decision to demote his classification level or transfer him. The undisputed forecast of evidence reflects that the Plaintiff received 12 serious disciplinary infractions at MVCI which have not been overturned, i.e., one "threaten to harm/injure staff;" four "disobey order;" two "profane language;" one "attempt Class A offense;" two "no threat contraband'" one "lock tampering;" and one "substance possession." Fed. R. Evid. 201. These infractions demonstrate that there was a legitimate penological justification for the Plaintiff's increased security classification and his transfer to a higher-security prison. Accordingly, the Defendants will be granted summary judgment on the claims that his security demotion and transfer were retaliatory.

### C. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (*en banc*). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has

demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Because the Plaintiff has not forecast evidence that the Defendants violated a constitutional right in the first place, the Defendants are also entitled to qualified immunity with respect to the Plaintiff's individual capacity claims. The Court, therefore, will grant summary judgment for Defendants on this ground as well.

### D.    Motion to Compel

The Plaintiff has filed a Motion to Compel alleging that the Defendants and defense counsel failed to fully produce documents in response to his requests for production. [Doc. 43: Motion to Compel]. He asks the Court to re-open discovery, appoint counsel, and compel the Defendants to produce documents.

A scheduling order may be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); Dilmar Oil Co. v. Federated Mut. Ins. Co., 986 F.Supp. 959, 980 (D.S.C. 1997) ("Good cause" means that "scheduling deadlines cannot be met despite a party's diligent efforts.") (citations omitted).  Further, the court has "wide latitude in controlling discovery and ... [t]he latitude given the district courts extends as well to the manner in which it orders the course and scope of discovery."  Ardrey v. United Parcel Service, 798 F.2d 679, 682 (4th Cir. 1986); see Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (the decision to grant or deny a motion to compel is generally an issue within the broad discretion of the trial court).

North Carolina Prisoner Legal Services ("NCPLS") was appointed to assist the Plaintiff with discovery.  [Doc. 22: Pretrial Order and Case Management Plan].  NCPLS served defense counsel with discovery requests, received responses, reviewed those responses with the Plaintiff, and provided the Plaintiff with copies of the relevant documents.  [Doc. 24: NCPLS Notice; Doc. 25 NCPLS Motion to Withdraw]. NCPLS moved to withdraw after having discharged its obligations to assist the Plaintiff, and opined that the appointment of counsel was not required in this action.  [Id.].

NCPLS was permitted to withdraw from the representation on July 23, 2021. [Doc. 26: Order Granting Withdrawal].

The Plaintiff filed the instant Motion to Compel on February 2, 2022, more than six months after the discovery deadline expired and NCPLS withdrew [Doc. 22: Pretrial Order and Case Management Plan], and more than a month-and-a-half after the Defendants filed a Motion for Summary Judgment [Doc. 34 :MSJ]. The Plaintiff has failed to adequately explain this delay or demonstrate that he exercised diligence. Moreover, the Defendants have filed documentation demonstrating that they fulfilled their discovery obligations [Docs. 44-1, 44-2: Response Ex], to which the Plaintiff has not responded. The Motion to Compel is therefore denied.

## IV.   CONCLUSION

For the reasons stated herein, the Court will grant Defendants Grindstaff, Harris, Hughes, and King's Motion for Summary Judgment [Doc. 34], and deny the Plaintiff's Motion to Compel [Doc. 43].

## <u>ORDER</u>

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment [Doc. 34] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Plaintiff's Motion for an Order Compelling Discovery [Doc. 43]

   is **DENIED.**

The Clerk is respectfully directed to terminate this action.

**IT IS SO ORDERED.**

Signed: May 12, 2022

Martin Reidinger
Chief United States District Judge